520 A.2d 542

Laneco, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued September 11, 1986, before Judges DOYLE and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Norman A. Peil, Jr.,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE BARRY, January 28, 1987:

Laneco, Inc., the petitioner, appeals from an order of the Board of Finance and Revenue which affirmed a decision of the Department of Revenue's Board of Appeals that petitioner owed $202,494.78 plus interest to the Commonwealth for use taxes.

The following relevant facts were stipulated: Petitioner is the owner of a number of supermarkets and combination retail food-discount stores in eastern Pennsylvania. As part of its advertising, petitioner has circulars printed in Ohio. These circulars are then distributed by (1) mailing them directly to petitioner's customers in Pennsylvania, (2) placing them in petitioner's own stores for the customers and (3) shipping them from Ohio to a number of newspapers in eastern Pennsylvania where the circulars are inserted by the newspapers' employees prior to regular delivery of the newspapers.

The Department of Revenue assessed petitioner $202,494.78 for use taxes plus interest for the period from January 1, 1979 through December 31, 1981. The Board of Appeals affirmed the assessment as did the Board of Finance and Revenue. This appeal followed.

Petitioner concedes that it owes $33,952.10 plus interest for the circulars that were placed in its own stores. No assessment was ever made on the circulars placed in the mail and addressed to petitioner's customers. The sole issue remaining is whether the use tax is due on those circulars distributed with the local newspapers in eastern Pennsylvania.

At the time in question, Section 204 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7204, read as follows:

The tax imposed by Section 202 shall not be imposed upon

. . . .

(30)   The sale at retail or use of periodicals and publications which are published at regular intervals not exceeding three months, and which are circulated among the general public and containing matters of general interest and reports of current events published for the purpose of disseminating information of a public character or devoted to literature, the sciences, art or some special industry.[1]

The precise question posed is whether the advertising circulars are periodicals and publications within the meaning of Section 204(30). Petitioner asserts that this is a question of first impression in the Commonwealth. Our research indicates that this assertion is correct, as we have been unable to find any Pennsylvania cases deciding this exact issue. There are, however, a number of cases decided in other states which have dealt with a similar issue. Those cases have answered the question differently.

Best illustrative of the opposing positions are *Caldor, Inc. v. Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981), which held the inserts not exempt from taxation and *Sears, Roebuck and Co. v. State Tax Commission,* 370 Mass. 127, 345 N.E.2d 893 (1976), which held the inserts were exempt. In neither of the cases did the state legislatures involved define the term "newspaper", although in both jurisdictions newspapers were exempted from the sales and use taxes. Both courts recognized

---

[1] The Act of December 9, 1982, P.L. 1047, which became effective July 1, 1983, added the following sentence to the above quoted section: "This exclusion shall also include any printed advertising material circulated with such periodical or publication regardless of where and by whom such printed advertising material was produced." The question raised in the present case has been answered by the Legislature for all advertising material used after July 1, 1983.

that advertising is an essential part of a newspaper, and we have no quarrel with such an assertion, for it is common knowledge that monies from advertising are a prime source of revenue for newspapers.

In *Sears,* the court decided that the inserts were exempt from use taxes for three reasons. First, the court reasoned that if the advertisements had been printed by the newspapers themselves, no tax would result; merely changing the identity of the printer should not change that result. Second, it relied on a decision of the Third Circuit Court of Appeals in *Friedman's Express, Inc. v. Mirror Transportation Co.,* 169 F.2d 504 (3d Cir. 1948). There, a federal statute exempted from taxation motor vehicles used exclusively for the distribution of newspapers and the precise question was whether automobiles used for the distribution of comic sections to various newspapers for insertion into the Sunday editions of those newspapers fell within the exemption. As the Circuit Court stated:

> We shall not attempt a definition [of the term newspaper] other than to say that a typical modern Sunday newspaper embraces not only comic sections but financial sections, news sections, sports sections, magazine sections, and various special supplements. . . . The field of a modern newspaper is as broad and catholic as the field of its readers. . . .
>
> We think that Congress did not intend to make a fine-spun distinction between the distribution of newspapers and parts or sections of newspapers. The word 'newspapers' used in the statute in our opinion *was intended to embrace all or any of the component parts of a modern newspaper, each equally important to various public groups and to embrace the whole or any section thereof which is ready in form to be brought into the hands of the public.*

*Id.* at 506-07 (emphasis added) (footnotes omitted). After holding that *Friedman's Express* was sufficient authority to conclude that advertising supplements were a part of a newspaper and exempt from use taxation, the *Sears* court finally reasoned that a tax on newspaper revenues would have a devastating effect on freedoms guaranteed by the First Amendment to the United States Constitution.

The *Caldor* court took a different view. After first recognizing one common characteristic of all newspapers, *i.e.,* being published at short regular intervals generally not exceeding one week, the court held that since the advertising supplements were not prepared at short regular intervals, they were not newspapers. The court buttressed this conclusion by referring to the rule of statutory construction requiring a strict construction of a statute granting a tax exemption.

The court then went on to give its reasons for failing to follow the decision in *Sears.* First, the court relied upon the fact that there was no privity of contract between the newspaper and the printer at the time of the taxable event, *i.e.,* at the time ownership passed from the printer to the retailer. Because privity existed between the newspapers and the printers of the comic sections in *Friedman's Express,* the court concluded that *Sears* was, in its view, incorrectly decided. Furthermore, the court opined that since the comic sections were printed on a regular basis they commanded their own following unlike the inserts which were printed at an irregular basis. The court ultimately concluded that the inserts did not fit within the commonly accepted definition of "newspaper".

In the present case, Laneco urges that we find *Sears* to be more persuasive while the Commonwealth, of course, does the same with *Caldor.* Upon complete consideration of both cases, we believe that *Sears* is the more appropriate example to follow.

As we have already mentioned, advertisements are commonly accepted to be a portion of any newspaper. We also have no doubt that had Laneco chosen to advertise on the actual printed page of the newspapers in question the transaction would have been exempt from the taxes in question. We are not persuaded, as were not our brethren in Massachusetts, that since Laneco has the inserts printed elsewhere, this alone should change the ultimate result when those inserts were at all times intended for distribution with the newspapers. Furthermore, we believe that the advertisements contained in a newspaper, whether inserts or ads printed by the newspaper itself, are of sufficient interest to a significant portion of the newspaper buying public so that those advertisements must be treated similarly to the comic sections or any other well defined sections of the newspaper.

We also believe the points relied upon in *Caldor* cannot withstand critical analysis. First, that court relied upon the fact that the advertising inserts were not printed on a regular basis. Neither, however, are the ads which are printed by the newspaper, as advertising is heavier during certain parts of the year and lighter at others, so that regularity, when considering advertisements, means little if anything. Second, the *Caldor* court found no privity of contract between the newspaper and the printer of the ads at the time the inserts were delivered to the retailer. If the concept of privity is crucial to our case, we simply note that Laneco never took possession of those inserts which were delivered to the various newspapers, as it was the Ohio printer that shipped those inserts directly to the newspapers in question. Finally, regarding the court's statement that advertisements in a newspaper do not command the same following as other portions of the paper, we have already mentioned that we simply believe that assertion is incorrect.

The Commonwealth also argues that exemptions must be strictly construed against the one claiming the exemption. While we recognize the legitimacy of that rule of construction, it must be remembered that rules of construction are needed only when an ambiguity arises. Here, we find no such ambiguity. Newspapers are exempted from sales and use taxes. As we believe that advertisements are part and parcel of any newspaper these inserts, as advertisements, are entitled to the exemption.

ORDER

Now, January 28, 1987, the order of the Board of Finance and Revenue is reversed except for the $33,952.10 which petitioner concedes that it owes. This order will become final unless exceptions are filed within thirty days. See Pa. R.A.P. 1571(i).