173 Ariz. 644 (1993)
845 P.2d 1139
MERVYN'S, a California corporation, and Target Stores, a division of Dayton Hudson Corporation
v.
ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona.
No. TX 91-00057.
Tax Court of Arizona.
January 21, 1993.
*645 Lewis & Roca by Patrick Derdenger and Bruna E. Pedrini, Phoenix, for plaintiffs.
Atty. Gen. by Daniel G. Harrington, Phoenix, for defendant.

OPINION
SCHAFER, Judge.
Taxpayers brought this action against the Arizona Department of Revenue contesting use taxes assessed against them pursuant to A.R.S. § 42-1408. The parties submitted this case to trial on stipulated facts. The issue to be decided is whether newspaper advertising supplements printed out-of-state and circulated within the state by Arizona newspapers are subject to Arizona's use tax. The Court finds that the supplements are taxable.
Taxpayers, Mervyn's and Target Stores, are retailers selling a wide variety of merchandise *646 to customers in Arizona and other states. Both Taxpayers advertise their products in Arizona newspapers through the use of advertising supplements. These supplements are in tabloid form and are folded into the newspapers to be delivered with them. The supplements are not printed by the newspapers in which they are inserted. Instead, Taxpayers contract with independent printers located outside Arizona to print the supplements.
The Taxpayers decide what products will be advertised in the supplements and what the supplements will look like. Taxpayers also review the galley proofs of the supplements before they are released to the public.
Once the supplements are printed, they are delivered from the printers to the newspapers by common or private contract carrier. Taxpayers are billed either by the printer or the carrier for delivery charges.
The Taxpayers decide what newspapers will run the supplements and when they will run them. If the newspapers fail to distribute the supplements they are liable to Taxpayers for any damage. The Taxpayers can recall the supplements and they have the right to cancel the supplements' placement in the newspaper before the newspaper runs them.
If the supplements do not meet the newspapers' requirements regarding paper, color, quality of reproduction, etc., the newspapers can reject them. These rejected supplements are returned to Taxpayers.
The newspapers charge the Taxpayers a storage fee if the supplements are stored with the newspapers before distribution for more than fifteen days. The newspapers do not copyright the supplements and the supplements do not carry the masthead of the newspapers.
The Arizona Department of Revenue audited Mervyn's for the period of January 1, 1982 through June 30, 1984 and July 1, 1984 through January 31, 1985. The Department audited Target for the period of March 1, 1983 through March 31, 1985. As a result of these audits, the Department determined that Taxpayers owed use taxes on the amount paid to the printers for the newspaper supplements. The Department assessed Taxpayers pursuant to A.R.S. § 42-1408. That section states in pertinent part:
A. There is levied and imposed an excise tax on the storage, use or consumption in this state of tangible personal property purchased from a retailer, as a percentage of the sales price....
D. Every person storing, using or consuming in this state tangible personal property purchased from a retailer is liable for the tax.
Taxpayers maintain they are not taxable under this section for three reasons. First, they argue they did not store, use, or consume the supplements in Arizona and therefore their activities fall outside the scope of A.R.S. § 42-1408. Alternatively, they argue that if they are taxable under § 42-1408, they are nevertheless exempt from the tax pursuant to A.R.S. § 42-1409(A)(1) or A.R.S. § 42-1409(A)(4). Finally, Taxpayers argue the taxation of the supplements is unconstitutional.
Arizona's use tax is imposed by Article 2, Chapter 8, Title 42, of the Arizona Revised Statutes. In People of Faith Inc. v. Arizona Dep't of Revenue, 161 Ariz. 514, 517, 779 P.2d 829, 832 (Tax 1989), the court discussed the purpose of the use tax:
Use taxes, sometimes otherwise labelled, came into being to inhibit buyers from avoiding sales taxes by making purchases out-of-state of goods which were to be used within the state. The difference between sales and use taxes is sometimes defined by describing sales taxes as being imposed on transactions within a state, and use taxes as being imposed on transactions consummated out-of-state.
Typically, sales taxes and use taxes are complementary. Both taxes start with a retail sale. The sales tax is a transaction tax on the sale. It is imposed *647 upon the seller but ordinarily is passed through to the buyer. The use tax is a tax on the privilege of using the purchased property within the state and is imposed on the buyer... . If the sale was subject to sales tax, the buyer is exempt from use tax. (citations omitted)
The Idaho Supreme Court stated similarly that their use tax discourages Idaho purchasers from purchasing property in states with lower or no sales taxes to avoid Idaho sales tax. K-Mart Corp. v. Idaho State Tax Comm'n, 111 Idaho 719, 727 P.2d 1147 (1986). The court in that case was confronted with the same issue as this court is today. That court found that imposing a use tax on K-Mart's purchase of newspaper supplements furthered the purpose of the use tax.
The Missouri Supreme Court found in a similar case that a Missouri Taxpayer who had pattern specimens bound into sample books by an out-of-state binder and delivered to it to be delivered to in-state retailers was liable for Missouri's use tax. R & M Enterprises, Inc. v. Director of Revenue, 748 S.W.2d 171 (Mo. 1988). The Court in that case stated, "The purpose of the use tax is to protect Missouri revenue and Missouri sellers against competition from out-of-state sellers by removing any advantage which might be gained by making purchases outside the state, on which no sales tax is collected." R & M at 172.
In the case before the Court, no sales tax was paid on the printers' sale of the supplements to the Taxpayers. If Taxpayers had purchased the supplements from an instate printer or retailer, the purchase would have been subject to sales tax. A.R.S. § 42-1310.01 and A.R.S. § 42-1310.06. The purpose of the use tax would clearly be furthered by taxing Taxpayers' activities.

Do Taxpayers' Activities Fall Within the Scope of A.R.S. § 42-1408?
Under the applicable statute, Taxpayers are subject to Arizona's use tax if they store, use, or consume in Arizona tangible personal property purchased from a retailer. A.R.S. § 42-1408. Storage is defined in A.R.S. § 42-1401(6):
"Storage" means keeping or retaining tangible personal property purchased from a retailer for any purpose except sale in the regular course of business or subsequent use solely outside this state.
Use or consumption is defined in A.R.S. § 42-1401(8):
"Use or consumption" means the exercise of any right or power over tangible personal property incidental to owning the property except holding for sale or selling the property in the regular course of business.
Taxpayers argue that they did not use, store or consume the advertising supplements in Arizona. This issue, while new to Arizona, has been brought before a number of courts in other jurisdictions. Where the facts were similar to those in this case, most courts have held that the supplements are subject to the use tax. K-Mart v. Idaho State Tax Comm'n, 111 Idaho 719, 727 P.2d 1147 (1986); Phillips Mercantile Co. v. N.M. Taxation and Revenue Dep't, 109 N.M. 487, 786 P.2d 1221 (App. 1990); Drackett Products Co. v. Limbach, 38 Ohio St.3d 204, 527 N.E.2d 860 (1988); K-Mart Corp., Inc. v. S.D. Dep't of Revenue, 345 N.W.2d 55 (S.D. 1984); Wis. Dep't of Revenue v. J.C. Penney Co., Inc., 108 Wis.2d 662, 323 N.W.2d 168 (App. 1982). See also D.H. Holmes Co., Ltd. v. McNamara, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) (where definition of "use" includes distribution, "use" occurs when catalogs are printed out-of-state and mailed directly to residences within state); Miller Brewing Co. v. Korshak, 35 Ill.2d 86, 219 N.E.2d 494 (1966); appeal dismissed, Miller Brewing Co. v. Jones, 386 U.S. 684, 87 S.Ct. 1325, 18 L.Ed.2d 405 (1967) (taxable use occurs when advertising materials are produced out-of-state and delivered in-state to wholesalers for display); Chesapeake and Potomac Tel. Co. v. Comptroller of Treasury, 317 Md. 3, 561 *648 A.2d 1034 (1989) (taxable use occurs when directories are printed out-of-state and delivered directly by common carrier to customers); R & M Enterprises, Inc. v. Director of Revenue, 748 S.W.2d 171 (Mo. 1988) (taxable use occurs when pattern specimens are bound into sample books by out-of-state binder and delivered to Taxpayer to be delivered to in-state retailers).
The Taxpayers in this case do not "consume" the newspaper supplements while they are in Arizona, but they do "use" them for purposes of A.R.S. § 42-1401(8). Taxpayers purchase the supplements, they decide what newspapers will run them and they decide when they will run. If the newspapers fail to distribute the supplements they are liable to Taxpayers for any damage. The Taxpayers can recall the supplements and have the right to cancel the supplements' placement in the newspapers before the newspapers run them. If the newspapers reject the supplements, they are returned to Taxpayers. The supplements belong to the Taxpayers and there is no evidence, except for the acts of inserting and distributing, that Taxpayers ever relinquish control of them to anyone.
Taxpayers also "store" the supplements for purposes of A.R.S. § 42-1401(6). After the supplements are delivered to the newspapers they are not sent to the reader until the newspapers are ready for distribution, in some cases not until seven or eight days after delivery. Thus, the supplements are "stored" until they are distributed. The Taxpayers' contracts with the newspapers provide for a storage fee if the supplements remain with the newspapers for fifteen days before they are sent to the ultimate consumer. For purposes of the use tax it makes no difference whether Taxpayers store the supplements or they pay someone to store them  both are "storage" and both give rise to the tax.
Courts reaching the opposite conclusion were faced with dissimilar facts. Only one case cited by Taxpayers involves newspaper supplements printed out-of-state for distribution with in-state newspapers. Sears, Roebuck & Co. v. D.C., No. 2463 (D.C.Super.Ct. March 26, 1981). But title to these supplements passed to the newspaper upon delivery to the paper; it did not here. See also, Boye Needle Co. v. Dep't of Revenue, 45 Ill.2d 484, 259 N.E.2d 278 (1970), (no taxable use when display racks are manufactured out-of-state and sent either to Taxpayers' in-state warehouse or direct to various retailers because title is transferred to customer).
The remaining cases cited by the Taxpayers involve advertising catalogs, telephone directories, or similar items prepared out-of-state and delivered in-state directly to the recipient. Unlike this case, the Taxpayers there lost control of the materials as soon as they were put in the mail by either the out-of-state printer or the carrier hired to deliver the material to the post office. D.C. v. W. Bell & Co., Inc., 420 A.2d 1208 (D.C.App. 1980) (no taxable use when merchandise catalogs are printed outside the District and distributed by common carrier to post offices within the District for delivery to recipients); In re Bennett Brothers, Inc. v. State Tax Comm'n, 62 A.D.2d 614, 405 N.Y.S.2d 803 (1978) (no taxable use when hard cover catalogs are printed out-of-state and distributed to post offices located in various states to be mailed directly to in-state industrial and commercial companies); Mart Realty, Inc. v. Norberg, 111 R.I. 402, 303 A.2d 361 (1973) (no "consumption" when circulars are printed out-of-state and sent by an independent carrier to a mailing firm chosen by the printer to be mailed to in-state residents); Modern Merchandising, Inc. v. Dep't of Revenue, 397 N.W.2d 470 (S.D. 1986) (no taxable use when catalogs and flyers are printed out-of-state and either mailed directly to instate recipients or turned over to common carriers who deliver them to post offices located in-state for mailing to recipients); Dep't of Revenue v. Horne Directory, Inc., 105 Wis.2d 52, 312 N.W.2d 820 (1981) (no taxable use when telephone directories are printed out-of-state and delivered directly by mail to in-state subscribers); Montgomery Ward & Co. v. Dep't of Revenue, [Kentucky] *649 St.Tax Rep. (CCH) ¶ 201-035 (June 26, 1968) and In re Montgomery Ward & Co., Inc., No. TSB-H-79(115)S (N.Y. State Tax Comm'n Nov. 9, 1979) (no taxable use when catalogs are printed out-of-state and either mailed directly to in-state recipients or turned over to common carriers who deliver them to post offices located in-state or out-of-state for mailing directly to recipients).

Are Taxpayers Exempt from the Tax Pursuant to A.R.S. § 42-1409(A)(4)?
The Taxpayers argue that even if their supplements are taxable under A.R.S. § 42-1408, they are exempt from the use tax under the "component part" exemption contained in A.R.S. § 42-1409(A)(4). That section provides:
A. The tax levied by this article does not apply to the storage, use or consumption in this state of the following described tangible personal property:
4. Tangible personal property which directly enters into and becomes an ingredient or component part of any manufactured, fabricated or processed article, substance or commodity for sale in the regular course of business.
Taxpayers argue their supplements are a component part of the newspapers they are distributed with and are therefore exempt from tax. Several courts have addressed whether an advertising supplement is a component part of a newspaper and the results have gone both ways.
Courts that have held advertising supplements are part of a newspaper include: Eagerton v. Dixie Color Printing Corp., 421 So.2d 1251 (Ala. 1982); Indiana Dep't of State Revenue v. L.S. Ayers & Co., 486 N.E.2d 563 (Ind. App. 1985); Appeal of K-Mart Corp., 238 Kan. 393, 710 P.2d 1304 (1985); Sears, Roebuck & Co. v. State Tax Comm'n, 370 Mass. 127, 345 N.E.2d 893 (1976); Laneco, Inc. v. Commonwealth, 103 Pa.Commw. 355, 520 A.2d 542 (App. 1987).
Courts holding supplements are not a component part of a newspaper include: Ragland v. K-Mart Corp., 274 Ark. 297, 624 S.W.2d 430 (1981); Caldor, Inc. v. Heffernan, 183 Conn. 566, 440 A.2d 767 (1981); Sears, Roebuck & Co. v. Lindley Tax Comm'r, 70 Ohio St.2d 249, 436 N.E.2d 1029 (1982).
Considering the facts in this case, the Court finds those cases holding that supplements are not a component part of a newspaper more persuasive. The supplements in this case do not bear the newspapers' mastheads, are not listed in the table of contents, and do not appear in every edition of the paper. The newspapers do not prepare the supplements nor do they own them. In addition, Taxpayers distribute the same supplements at their stores, so one can get them without buying a newspaper. Finally, it is the Taxpayers who pay the newspapers to insert the supplements, not vice-versa. This combination of facts leads the Court to hold that Taxpayers' supplements are not a component part of the newspapers they are distributed with and therefore do not qualify for the exemption contained in A.R.S. § 42-1409(A)(4).

Are Taxpayers Exempt from the Tax Pursuant to A.R.S. § 42-1409(A)(1)?
The Taxpayers also argue they are exempt from the use tax pursuant to A.R.S. § 42-1409(A)(1). That section provides:
A. The tax levied by this article does not apply to the storage, use or consumption in this state of the following described tangible personal property:
1. Tangible personal property sold in this state, the gross receipts from the sale of which are included in the measure of the tax imposed by article 1 of this chapter.
Article 1 deals with transaction privilege taxes. Thus, Taxpayers are exempt pursuant to A.R.S. § 42-1409(A)(1) only if (1) the *650 advertising supplements are "sold" when they are distributed with the newspapers and (2) the gross receipts from the sale of the advertising supplements are subject to transaction privilege tax.
Taxpayers argue their supplements were "sold" when the newspapers with which they were distributed were sold. The Court disagrees. The supplements were not "sold" because they are not a component part of the newspaper and the ultimate readers paid nothing for them. The newspaper does sell advertising space to the Taxpayers who supply the supplements, but it does not sell the advertising supplements to its consumers. Because there is no sale of the supplements, it is unnecessary to address whether the gross receipts from the sale of the supplements are subject to transaction privilege tax. The Court holds that the Taxpayers are not entitled to the exemption contained in § 42-1409(A)(1).

Is the Use Tax Unconstitutional?
Finally, Taxpayers urge that if the Court finds the supplements subject to the use tax, then the tax itself is unconstitutional. They argue that if the Court holds their supplements taxable, there will be a disparity between the treatment of newspapers which purchase advertising supplements from in-state printers and those which purchase supplements from out-of-state printers.
Taxpayers explain that a supplement purchased by a newspaper from an in-state printer would be exempt from transaction privilege tax pursuant to A.R.S. § 42-1310.06(B)(1)(a) because the newspaper "resells" the supplement when it distributes it with the newspaper. On the other hand, they continue, the same supplement purchased by a newspaper from and out-of-state printer would be liable for a use tax.
But the Court disagrees. An advertising supplement is not resold by its insertion into a newspaper. Therefore, such a supplement would not be exempt as a sale for resale under either a use or sales tax provision. Because there is no disparate treatment, the use tax is not unconstitutional.
The Court finds the purchase price of Taxpayers' newspaper advertising supplements, which are printed by out-of-state printers and circulated within the state by Arizona newspapers, subject to Arizona's use tax.