937 P.2d 336

**SERVICE MERCHANDISE COMPANY, INC., Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.**

No. 1 CA–TX 95–0002.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 3, 1996.

Review Denied May 20, 1997.

Lewis and Roca LLP by John P. Frank, Patrick Derdenger, Michael Galloway, Phoenix, for Plaintiff–Appellant.

Grant Woods, Attorney General by Michelle M. White, Assistant Attorney General, Joseph A. Kanefield, Assistant Attorney General, Michael Worley, Assistant Attorney General, Phoenix, for Defendant–Appellee.

## OPINION

LANKFORD, Judge.

The Arizona Department of Revenue ("DOR") assessed Arizona use taxes against Service Merchandise Company ("Service Merchandise") on the price it paid to out-of-state printers to produce catalogs and sales fliers delivered to Arizona households. After exhausting its administrative remedies, Service Merchandise brought this tax court action against DOR challenging the assessment.

On cross-motions for summary judgment, the tax court ruled for DOR. Service Merchandise timely appealed. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–2101(B) (1994). We review the summary judgment de novo. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990). Our review leads us to affirm.

The material facts are undisputed. Service Merchandise, a Tennessee corporation, does business in 37 states. It operates 390 retail stores, two of which are in Arizona. Customers may either purchase merchandise in a store or order merchandise by telephone or mail and have the merchandise delivered to their homes.

Service Merchandise distributes catalogs and fliers to its customers throughout the year. A large fall catalog advertises all of its products. A smaller spring catalog emphasizes items appropriate for the summer, and fliers are periodically distributed to promote special sales.

Service Merchandise designs its catalogs and fliers at its Tennessee headquarters. It decides how many catalogs and fliers will be produced, the products and prices to be advertised, when the catalogs and fliers will be printed and distributed, and to whom these materials will be delivered.

Two non-Arizona companies printed the catalogs and fliers. The printers prepared a draft catalog or flier according to specifications set by Service Merchandise, which then

approved the drafts. After the catalogs and fliers were printed, the printers affixed addresses to them from a mailing list provided by Service Merchandise.

The printers turned the fall catalogs over to common carriers, who shipped the catalogs to the main United States Postal Service office in Phoenix for mailing to Arizona homes. Service Merchandise obtained bids from the common carriers, but the printers chose the carriers from a list of successful bidders provided by Service Merchandise.

The common carriers paid postage charges with blank checks that Service Merchandise had provided through its printers. Service Merchandise paid the common carriers directly. No Service Merchandise employees directly oversaw the common carriers or had any direct contact with the fall catalogs in Arizona.

The procedure differed for the spring catalogs and fliers. The printers mailed these directly to addressees in Arizona from postal facilities at the printers' locations. For each mailing, the printer calculated the required postage and informed Service Merchandise, which returned a check in that amount.

## I.

■ Service Merchandise first contends that the use tax is inapplicable because it did not use the catalogs and fliers in Arizona. We hold that Service Merchandise "used" the catalogs in Arizona by distributing them to its customers in Arizona and therefore hold that the use tax was properly applied.

Arizona imposes a tax on the "use or consumption in this state of tangible personal property purchased from a retailer...." A.R.S. § 42–1408(A) (Supp.1995). "Every person ... using or consuming in this state tangible personal property purchased from a retailer is liable for the tax." A.R.S. § 42–1408(D) (Supp.1995).

"Use" and "consumption" are defined by statute as "the exercise of any right or power over tangible personal property incidental to owning the property...." A.R.S. § 42–1401(8) (Supp.1995). We must therefore determine whether Service Merchandise exercised any power in this State incidental to ownership of the fliers or catalogs.

Service Merchandise concedes that it exercised rights incidental to ownership while the catalogs were *outside* Arizona. Its officers and employees in Tennessee entered into contracts with the printers, determined the content of the catalogs and fliers, compiled address lists, contracted with common carriers, and paid for the printing and shipment of the materials.

However, Service Merchandise denies that it exercised any such rights in Arizona. It contends that every act incidental to its ownership occurred in Tennessee. It further argues that while its acts in Tennessee caused the materials to be distributed in Arizona, it exercised no control over the materials after the printers shipped or mailed them from their out-of-Arizona locations.

We hold that distribution of the catalogs and fliers in Arizona was a use by Service Merchandise incidental to its ownership. Service Merchandise contracted for the right to have the catalogs distributed to specified Arizona customers at particular times during the year. Although the distribution contracts were consummated outside Arizona, the rights to control when, where, how, to whom and whether the catalogs would be delivered were exercised in Arizona through Service Merchandise's agents. We see no reason to treat Service Merchandise differently for tax purposes merely because it employed agents to do in Arizona what it could have done itself.

Courts from other jurisdictions have held that distribution of catalogs and fliers is an act incidental to ownership. These jurisdictions imposed use taxes under statutes which specifically taxed "distribution" in addition to "use." *See, e.g., Collins v. J.C. Penney Co.,* 218 Ga.App. 405, 461 S.E.2d 582, 584 (1995), *review granted,* No. 595G2002 (Ga. Jan. 5, 1996); *McNamara v. D.H. Holmes Co.,* 505 So.2d 102, 105 (La.App.1987), *aff'd,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988). Service Merchandise asserts that these cases are distinguishable because Arizona does not specifically include "distribution" in its definition of acts incidental to ownership. *See Sharper Image Corp. v. Michigan Dep't of*

*Treasury,* 216 Mich.App. 698, 550 N.W.2d 596, 598 (1996) ("Had the Legislature intended for distributions to be taxed, it could have easily done so by expressly providing it in the definition of use.").

It is true that our statute does not specifically mention distribution. However, it would be redundant to do so in light of Arizona's broad definition of "use." Arizona law defines use as "the exercise of *any* right or power over tangible personal property incidental to owning the property...." A.R.S. § 42–1401(8) (emphasis added). Because distribution is a right incidental to ownership, it was unnecessary for the Legislature to specifically include it in the definition of "use."

For example, the power to decide which customers will receive a catalog or flier is a power exercised "incidental to owning the property." Service Merchandise provided the list of addresses to the printers, and the printers followed the directions as to which specific customers would receive the catalogs. A non-owner could not decide to send the materials to particular customers. Nor could a non-owner decide to relinquish title to the materials by giving them to the potential customers. By directing the catalogs and fliers to be mailed to customers from the post office, Service Merchandise "used" the catalogs in Arizona.

We also find support for our decision in the so-called "newspaper cases." In these cases, out-of-state taxpayers contracted with out-of-state printers to print and distribute newspaper advertisement inserts. The advertisements were shipped by the out-of-state printers to in-state newspapers. The taxpayers contracted with in-state newspapers to insert advertisements.

The courts uniformly held that the out-of-state taxpayer must pay a use tax. The courts concluded that the out-of-state taxpayer "used" the inserts by virtue of their "power to determine the date of distribution and the number of copies to be distributed." *K Mart Corp. v. South Dakota Dep't of Rev.,* 345 N.W.2d 55, 58 (S.D.1984); *see also Wisconsin Dep't of Rev. v. J.C. Penney Co.,* 108 Wis.2d 662, 323 N.W.2d 168, 172 (App.1982).

We disagree with Service Merchandise's attempts to distinguish the newspaper cases.[1] While Service Merchandise notes that in the newspaper cases the out-of-state taxpayer contracted with in-state agents (the newspapers) to distribute the materials, this is not a legally important distinction. The question is whether the catalogs were "used" by Service Merchandise in this state through the actions of an agent. Whether the agent is based in Arizona or not is immaterial. In either instance, the taxpayer performs acts incidental to ownership of the materials by proxy.

Service Merchandise also argues that in the newspaper cases, the advertisers determined when the inserts would be distributed. But Service Merchandise had as much power over distribution schedules as did the advertisers in the newspaper cases. For example, in *Drackett Products Co. v. Limbach,* 38 Ohio St.3d 204, 527 N.E.2d 860 (1988), the out-of-state taxpayer contracted with Ohio newspapers to run inserts printed out-of-state and shipped to the Ohio newspapers. Under the contract, an advertisement could not be canceled unless the newspaper found replacements but in no case could an advertisement

---

1. In *Mervyn's v. Arizona Dep't of Rev.,* 173 Ariz. 644, 648, 845 P.2d 1139, 1143 (Tax 1993), the tax court held that newspaper supplements prepared out-of-state and inserted into Arizona newspapers for distribution were subject to Arizona's use tax. The court wrote that the taxpayers "used" the inserts because:

> [T]hey decide what newspapers will run them and they decide when they will run. If the newspapers fail to distribute the supplements they are liable to Taxpayers for any damage. The Taxpayers can recall the supplements and have the right to cancel the supplements' placement in the newspapers before the news-

papers run them. If the newspapers reject the supplements, they are returned to Taxpayers. *Id.* In so holding, the tax court distinguished those cases in which the courts refused to apply the use tax to an out-of-state printer mailing catalogs or flyers into the taxing state. The court noted that in the catalog cases "the Taxpayer ... lost control of the materials as soon as they were put in the mail by either the out-of-state printer or the carrier hired to deliver the material to the post office." *Id.* We disapprove of this dicta in *Mervyn's.* We see no reason to distinguish between distribution by newspapers and by the postal service of materials produced out-of-state.

be canceled after the printing deadline had passed. *Id.* at 861. Applying a statute similar to Arizona's, the Ohio Supreme Court found a taxable use. *Id.* at 862.

The taxpayer's control over distribution in *Drackett* was no greater than that exercised by Service Merchandise. It intended that the catalogs be distributed in Arizona at specific times throughout the year. Choosing which day to mail the fliers is no more or less an act of control than choosing which week's newspaper will include an advertising supplement. Once it chose the date of mailing, Service Merchandise had the same expectation that the materials would be distributed to its customers as if it had submitted newspaper inserts to Arizona newspapers for distribution.

We conclude that Service Merchandise used the catalogs and fliers in Arizona, and accordingly that Arizona's use tax applies.[2]

## II.

■ Having held that Arizona's use tax applies to distribution and delivery of the fliers and catalogs in this state, we now must determine whether the application of the Arizona use tax to Service Merchandise violates the Commerce Clause of the United States Constitution.[3] We hold that it does not.

We agree with DOR that the Commerce Clause question is answered by the United States Supreme Court's decision in *D.H.* *Holmes Co., Ltd. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988). In that case, a Louisiana corporation, Holmes, contracted with out-of-state printers to produce merchandise catalogs for distribution primarily to Holmes' customers in Louisiana. A Louisiana appeals court upheld the application of Louisiana's use tax to the distribution of the catalogs. Holmes argued that taxing the distribution of the catalogs violated the Commerce Clause.

The Court in *Holmes* applied a four-part test for determining whether one state's tax on goods purchased in another state violates the Commerce Clause: (1) Does the taxable activity have a substantial nexus to the taxing state? (2) Is the tax fairly apportioned? (3) Does the tax discriminate against interstate commerce? and (4) Is the tax fairly related to benefits provided by the state? *Holmes,* 486 U.S. at 30, 108 S.Ct. at 1623 (citing *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 287, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326 (1977)).

The Court had "no doubt" that the second and third elements of the test were satisfied. *Holmes,* 486 U.S. at 31, 108 S.Ct. at 1623–24. The tax was fairly apportioned because it provided a credit against use taxes when a sales tax was paid in another state. *Id.* Louisiana's use tax was not discriminatory because it was equal to the sales tax Louisiana would have applied had the goods been

---

**2.** Service Merchandise finds support in the jurisdictions which have held that a taxpayer did not "use" materials printed by an out-of-state printer because the taxpayer's creation and shipment of the materials occurred out-of-state. These courts concluded that the taxpayer had no in-state control over catalogs and flyers produced out-of-state and shipped into the state by mail or common carrier. *See, e.g., May Dep't Stores v. Director of Rev.,* 748 S.W.2d 174, 175 (Mo.1988); *Modern Merchandising, Inc. v. Dep't of Rev.,* 397 N.W.2d 470, 472 (S.D.1986); *District of Columbia v. W. Bell & Co.,* 420 A.2d 1208, 1211 (D.C.App.1980); *Bennett Bros., Inc. v. State Tax Comm'n,* 62 A.D.2d 614, 405 N.Y.S.2d 803, 805 (1978). Some of these cases specifically distinguished catalogs delivered by common carrier or the postal service from flyers distributed in newspaper inserts. *Wisconsin Dep't of Rev. v. J.C. Penney Co.,* 323 N.W.2d at 172; *Modern Merchandising, Inc. v. Dep't of Rev.,* 397 N.W.2d at 472. We disagree with these cases because we

conclude that distribution of the catalogs and flyers through an agent is an act incidental to ownership of the property.

**3.** Service Merchandise did not challenge the application of the Arizona use tax on Commerce Clause grounds below. In general, a party may not raise new issues in the appellate court to secure reversal of a summary judgment. *Contempo Const. v. Mountain States Tel. & Tel. Co.,* 153 Ariz. 279, 282, 736 P.2d 13, 16 (App.1987). However, "[q]uestions of constitutional guarantees and violations thereof may be raised for the first time on appeal." *Gosewisch v. American Honda Motor Co.,* 153 Ariz. 400, 406, 737 P.2d 376, 382 (1987). We exercise our discretion to consider the Commerce Clause question because it was adequately briefed on appeal and because it involves some of the same factual inquiries as were involved in determining whether the use tax applied.

purchased in Louisiana. *Id.* at 32, 108 S.Ct. at 1624.

Both statements characterize Arizona's use tax statute as well. The use tax rate is equal to the sales tax rate had the goods been purchased in Arizona. A.R.S. § 42–1408(C) (Supp.1995). Also, the use tax is inapplicable to property whose sale or use has been subjected to another state's excise tax at a rate that equals or exceeds Arizona's. A.R.S. § 42–1409(A)(2) (Supp.1995).

In holding that the tax was related to benefits Louisiana provided to Holmes, the Court noted that Louisiana provides fire and police protection for Holmes' stores, maintains public roads which benefit Holmes' customers, runs mass transit and provides other civic services. *Holmes,* 486 U.S. at 32, 108 S.Ct. at 1624. Although Holmes had thirteen stores in Louisiana and Service Merchandise has only two in Arizona, this state nevertheless provides benefits related to imposition of the tax. The catalogs and fliers presumably lead customers to use Arizona's infrastructure to travel to the stores and to order and receive items from the catalogs.

Lastly, the Court in *Holmes* held that there was a substantial nexus between the distribution of the catalogs and the state. *Id.* First, the Court noted that Holmes ordered the catalogs and decided which customers in Louisiana would receive them. *Id.* Second, the Court noted that Holmes' purpose in distributing the catalogs was to increase its sales in Louisiana. *Id.* Third, the Court pointed to Holmes' "significant presence" in Louisiana, with 13 stores and over $100 million in annual sales in the state. *Id.* From these facts, the Court found "nexus aplenty." *Id.* at 33, 108 S.Ct. at 1624.

Sufficient nexus exists too between Arizona and the distribution of the catalogs and fliers in Arizona. As in *Holmes,* Service Merchandise determined that Arizona households would receive the catalogs and fliers and directed that they be sent into Arizona. The purpose of sending the catalogs into Arizona was to encourage Arizona residents either to shop in one of the two Service Merchandise stores in Arizona or to order goods by mail. Although it only has two

stores in Arizona, its presence is not so minimal that the nexus between Arizona and Service Merchandise's efforts to distribute catalogs and fliers in this state is insubstantial. *See National Geographic Soc'y v. California Bd. of Equalization,* 430 U.S. 551, 556, 97 S.Ct. 1386, 1390, 51 L.Ed.2d 631 (1977) (upholding application of California use tax to mail order activities of a national magazine with only two offices in California).

We conclude that Arizona's use tax applies to the distribution and delivery in Arizona of catalogs and fliers printed out-of-state. We also hold that imposition of the use tax in this situation is consistent with the Commerce Clause of the United States Constitution. Accordingly, we affirm the judgment of the tax court.

SULT and ESPINOSA, JJ., concur.