615 So.2d 774 (1993)
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Appellant,
v.
QUOTRON SYSTEMS, INC., etc., Appellee.
No. 92-2156.
District Court of Appeal of Florida, Third District.
March 9, 1993.
Robert A. Butterworth, Atty. Gen. and Lealand L. McCharen, Asst. Atty. Gen., Tallahassee, for appellant.
Thomson, Muraro, Razook & Hart, Carol A. Licko and Richard Razook, Miami, for appellee.
Holland & Knight, James M. Ervin, Jr., Susan L. Turner and Cheridah V. Roberts, Tallahassee, for Intern. Business Machines, Inc., as amici curiae.
Before SCHWARTZ, C.J., and BASKIN and GERSTEN, JJ.
PER CURIAM.
The judgment below is affirmed on the basis of the comprehensive decision of the trial court which is set out in the appendix. Accord Henley Holding's Inc. v. Department of Revenue, No. 89-4381 (Fla. 2d Cir.Ct. July 22, 1991), aff'd, 599 So.2d 1282 (Fla. 1st DCA 1992).

APPENDIX

I. FINDINGS OF FACT

The Final Assessment
1. This action arises from the Notice of Proposed Assessment dated May 4, 1990 (the "Final Assessment"), issued by the Defendant Florida Department of Revenue (the "Department") to Plaintiff Quotron Systems, Inc. ("Quotron"). The Final Assessment refers to the four-year audit period from July 1, 1985 through May 31, 1989 ("Audit Period"), and reflects a balance of $3,827,300.27 allegedly due for unpaid sales taxes, plus penalties and interest through May 2, 1990. Interest on the Final Assessment accrues at the rate of $812.31 per day.

The Department's Claims
2. The Department claims Quotron owes sales taxes during the Audit Period and in accordance with the Final Assessment based upon two alternative arguments: first, the Department claims Quotron's transmission of electronic images to the video display screens of its Florida subscribers constitutes a "sale" of "tangible personal property" within the definitions provided by Section 212.02(12), Florida Statutes. That statute provides, in pertinent *775 part, that "tangible personal property means and includes personal property which may be seen, weighed, measured or touched or is in any manner perceptible to the senses, including electric power or energy... ." The Department maintains Quotron was selling "images" which could be "seen" on the subscriber's terminals. In the Department's view, because those images of data and text were thus "perceptible to the senses," the amounts charged by Quotron for its services was taxable.
3. Alternatively, the Department asserts the equipment provided to some (not all) Florida subscribers or otherwise used as a vehicle to receive the electronic images constitutes a "rental" of "tangible personal property" in connection with "services," and thus, relying upon the definition of "sales price" in Section 212.02(17), subjects all the charges by Quotron to sales tax. With respect to the subscribers who did not use Quotron's equipment, the Department alleges the very fact that equipment is used in the delivery of the service constitutes a "rental" of property, subjecting the entire transaction to sales tax.

Quoton's Financial Services
4. The undisputed record shows Quotron provides high-speed electronic delivery of various financial news and information to its subscribers via display on video screens. Quotron's Florida subscribers primarily include banks, stock brokerage firms, fund managers and institutions investing in financial markets.
5. Subscribers execute separate agreements with the actual owners of the financial information (for example, the national stock exchanges) regarding the subscribers' use of such information. Subscribers are billed separately by the owners of the information (the stock exchanges) for the information they receive via Quotron's integrated electronic delivery system.
6. Although portions of the information displayed on the video screen can be printed, at the subscriber's option, there are no records available to indicate how often or when, if at all, this print option is used. Quotron does not separately sell information in printed form or provide information duplication services resulting in printed, mimeographed, multigraphed, or other duplicated matter.
7. The technology employed by Quotron to display such exchange news and data on desk top terminals at the customers' offices was developed and came into commercial use during the 1960's, over ten years after the Florida Legislature adopted the sales tax statutes and definitions relied upon by the Department in its attempt to tax Quotron's financial services as "tangible personal property."

Quotron's Equipment
8. Quotron uses certain integrated equipment to deliver its services, and the Department points to this fact as support for its argument that Quotron is "renting" such equipment to its subscribers. However, the record shows that, at most some of Quotron's subscribers had access to one piece of equipment only: the dumb video terminals that display the images constituting the news. None of Quotron's customers had possession or control over the physical operation of the central processing unit (the "CPU") and related equipment, which are the most important pieces of equipment associated with Quotron's financial services. The record shows the CPU is kept in locked rooms generally located off the subscriber's premises. Quotron reserves the right to replace or remove the CPU at any time, and provides the technical and engineering and other support to keep the CPU operating. Quotron also insures all of its equipment, including the CPU and has the contractual responsibility to maintain the equipment; at the termination of the services agreement with the subscriber, Quotron immediately removes the equipment. The record further shows the equipment has no other significant independent value other than its use in connection with the delivery of Quotron's financial services.
9. Quotron's method of determining its total charges for its financial services was based upon the subscriber's usage of the financial services, not upon a "rental" of the equipment; thus, the undisputed record *776 shows there were no significant differences as to charges by Quotron between the customer who supplied his own video desk units and the customer who used Quotron's equipment. Quotron's method of charging for the equipment did not reflect an intent on the part of Quotron to receive a fair rental for the equipment being used.
10. The Department has argued here that Quotron's provision of certain equipment subjects all charges for Quotron's financial services to sales tax. The Department did not assert this argument in Henley Holdings. See also, TAA # 89A-027. The result is an attempt to treat similarly situated companies differently.

Quotron's Payment of the Sales Tax on Its Servies in 1987
11. Prior to 1987, there was not "clear and unambiguous" assertion by the Department that services such as Quotron's were subject to sales tax, and in fact the Department indicated otherwise in various responses to requests for technical assistance.
12. In 1987, pursuant to the sales tax on services adopted by the Florida Legislature, the Department in turn adopted rules classifying services such as Quotron's as taxable electronic services.
13. Quotron paid all taxes due pursuant to the short-lived sales tax on services. When the sales tax on services was repealed six months later, Quotron stopped collecting and remitting such sales taxes, and the Department at that time took no action which would have indicated any disagreement with Quotron's position as to the non-applicability of tax.

II. CONCLUSIONS OF LAW

The Burden of Proof
1. As is the law with all taxing statutes, the Department has the burden of proof. In this case, the Department must establish that Quotron's transactions are within the "clear definite boundaries" of the statutory definition of a "sale" of "tangible personal property" subject to Florida sales tax. Thus, it is the Department's burden, not Quotron's, to show that the Department's interpretation of the Florida Statutes represented the clear and plain understanding of the law widely held by the taxpayers of this State in 1985, and that Quotron nevertheless failed to comply. As established by the record in this case, the Department has not met its burden of proof.
2. As a matter of law, tax statutes are construed strictly against the taxing power, and any doubts are to be resolved in favor of the taxpayer. Maas Brothers, Inc. v. Dickinson, 195 So.2d 193, 198 (Fla. 1967); Florida S & L Services, Inc. v. Department of Revenue, 443 So.2d 120 (Fla. 1st DCA 1983) and Florida Hi-Life [Lift] v. Department of Revenue, 571 So.2d 1364 (Fla. 1st DCA 1990).

Images on a Screen Do not Constitute Tangible Personal Property
3. Quotron's images on a screen are not capable of being touched or possessed; they are transient and have no enduring existence. The electronic images which appear on the video display screens of a subscriber's desk unit do not constitute "tangible personal property" as defined by Chapter 212, Florida Statutes, nor does the transmission of such images constitute a "sale". The definition of "tangible personal property" in Chapter 212 cannot be said to "clearly and unambiguously" extend to the electronic images appearing on video display terminals, and thus Quotron's financial services cannot be deemed taxable.
4. The plain and common meaning of "tangible personal property" does not include "images on a video screen."
5. The Legislature cannot have intended to tax a technology that postdates the enactment of the measure in question. Dade County v. AT & T Information Systems, 485 So.2d 1302 (Fla. 3d DCA), review denied, 494 So.2d 1150 (Fla. 1986); Radio Telephone Communication [Communications] v. Southeastern Telephone Co., 170 So.2d 577 (Fla. 1964). To argue, as the Department has, that the transient electronic images that appear on a computer screen are "taxable," because they are "perceptible to the senses," leads to an unreasonable result that is completely inconsistent with *777 the legislative intent at the time of adoption and the common meanings of the statutory terms used in Chapter 212, Florida Statutes.
6. In 1949, when the Florida Legislature enacted the definition of "tangible personal property," there were no on-line computer information services available to consumers. The Department has failed to show that the 1949 Florida Legislature intended the term "tangible personal property" to encompass the electronic images appearing on video screens.
7. When the Florida Legislature taxed computer services in 1987 as part of its short-lived services tax, it did not tax them as tangible property or intangible property, but rather as a taxable service. It is apparent from the services tax that the Florida Legislature is aware of electronic services, and knows how to tax such services when it wants to do so.
8. The Department has failed in its burden to show the 1949 Legislature clearly intended to tax transactions such as Quotron's, especially where as here the record shows the 1987 Legislature specifically classified such transactions to be services, not "tangible personal property."
9. This Court finds no statute, administrative rule, TAA or other public notice clearly and unambiguously putting companies such as Quotron on notice that its electronic services were subject to sales tax prior to the 1987 tax on services, or that such services continued to be subject to sales tax after the repeal of the 1987 tax on services. Furthermore, the Department's attempt to treat Quotron's services as "tangible personal property" for the period prior to July 1, 1987 and after December 31, 1987, is inconsistent with its own rules specifically characterizing such transactions as services from July 1, 1987 through December 31, 1987.
10. The Technical Assistance Advisements issued by the Department during the relevant period of time, although binding only on the taxpayer who requested such ruling, contradict the Department's assertion that services such as Quotron's were considered taxable as tangible personal property. For example, see TAA 83(A)-064, a computer-based legal research system; TAA 82(A)-1-014, electronic display of computer-generated betting data; and on-line computer data base service (TAA 82(A)-1-039); an on-line medical information service (TAA 83(A)-011); a computerized electronic service bureau providing accounting reports (TAA 83(A)-1-0002). All of these TAA's were issued during the time periods relevant to the Audit Period here. In not one of these TAA's did the Department find the services taxable; likewise, in not one of these TAA's did the Department announce, or even suggest, that the electronic images on the video screen did or could constitute "tangible personal property" subjecting all the charges to tax.
11. Chapter 212 generally taxes the "sale" of "tangible personal property." Chapter 212 provides certain exemptions from this tax on tangible personal property; for example, Section 212.08 exempts the sale of tangible personal property involved in "professional services." Section 212.08(7)(v)2 further provides an exception from the professional services exemption for "information services," which are taxable. The Department has argued that Quotron's services constitute a "sale" of tangible personal property not subject to the statutory exemption for professional services because they are "information services." The Department's argument on "information services" is relevant only if the Court finds such services constitute a "sale" of "tangible personal property." As this Court finds that Quotron's services do not involve the "sale" of "tangible personal property," the Department's argument that an exception to a statutory exemption from the tax applies here fails on its face.
12. For all the forgoing reasons, the Court concurs in, adopts, and specifically incorporates herein the trial court's holding in Henley Holdings v. Department Of Revenue, upheld by per curiam affirmance by the First District Court of Appeal, and holds here that the electronic images appearing on video display screens do not constitute "tangible personal property" subject to Florida sales tax under Chapter 212.

*778 Quotron's Transactions Do Not Constitute a Rental of Tangible Personal Property Subjecting the Entire Transaction To Sales Tax

13. There is no statutory definition of the term "rental," and thus this term must be given its ordinary meaning.
14. Quotron's use of certain video display terminals, CPU's and other equipment in connection with its provision of its financial services does not constitute the "rental" of tangible personal property subjecting the total "sales price" charged for Quotron's services to Florida sales taxes. See Rule 12A-1.071(10), Rentals, Leases or Licenses to Use Tangible Personal Property:
When the owner of equipment furnished the operator and all operating supplies and contracts for their use to perform certain work under his direction and according to the customer's specifications and the customer does not take possession or have any direction or control over the physical operation, the contract constitutes a service transaction and not the rental of tangible personal property, and no tax is due on the transaction.
15. Examining Quotron's activities, it can be concluded that what Quotron has done is engage in a service transaction with the assistance of equipment, as opposed to being in the business of leasing the equipment of which the service is only supplemental.
16. The Department has failed to show that Quotron was, or ever intended to be, in the business of renting its equipment.
17. Even if any aspect of Quotron's financial services constituted a sale of tangible personal property, Quotron's provision to its Florida subscribers of certain desk units and related equipment in connection with its financial services, is a mixed transaction constituting a "personal or professional service" exempt from Florida sales tax as provided in Section 212.08(7)(v)1, Florida Statutes.

Summary Judgment
18. A summary judgment motion is properly granted where, as in this case, the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1.510(c), Florida Rules of Civil Procedure.
19. The Department has failed to carry its burden of establishing that the sales tax is applicable to Quotron's financial services or the transactions in question. The Court is persuaded, on the undisputed facts, that Section 212.05, Florida Statutes, does not subject Quotron's transactions to sales tax. Even if, viewed in the light most favorable to the Department, the statute could be said to be ambiguous in this regard, all doubt would have to be resolved against the taxing authority and in favor of the taxpayer.
20. In Quotron's action, there are no genuine issues of material fact with respect to the controlling and dispositive issues raised herein, and thus it is in the interest of the parties and of judicial economy to resolve Quotron's Motion for Final Partial Summary Judgment at this time pursuant to this Final Judgment.