## SHARPER IMAGE CORPORATION *v.* DONALD F. MILLER, COMMISSIONER OF REVENUE SERVICES
### (15486)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued January 21—officially released April 22, 1997

*Michael I. Eisenstein,* pro hac vice, with whom was *Michael J. Mannion,* for the appellant (plaintiff).

*Aaron S. Bayer,* deputy attorney general, with whom were *Gregory T. D'Auria,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney gen-

eral, and *Richard K. Greenberg,* assistant attorney general, for the appellee (defendant).

*Opinion*

BERDON, J. The dispositive issue in this appeal is whether the plaintiff, under the circumstances of this case, is liable for the payment of a use tax, pursuant to General Statutes §§ 12-411 and 12-407 (5), on catalogs advertising the plaintiff's merchandise that were printed and mailed to Connecticut residents from outside the state. After the defendant, the commissioner of revenue services (commissioner), imposed a use tax on the catalogs mailed to Connecticut residents, the plaintiff, Sharper Image Corporation (Sharper Image), challenged the assessment by appealing to the Superior Court. The Superior Court affirmed the commissioner's action, and Sharper Image appealed to the Appellate Court. The Appellate Court affirmed the judgment of the Superior Court, but requested certification for review of its decision to this court pursuant to Practice Book § 4135,[1] because it found "that a substantial question of law exists that should be reviewed by the Supreme Court . . . ." *Sharper Image Corp.* v. *Miller,* 42 Conn. App. 310, 318, 678 A.2d 977 (1996). We granted the

[1] At the time that the Appellate Court requested certification, Practice Book § 4135 provided as follows: "The determination whether there shall be a request for certification by the appellate panel shall be made during its consideration of the case. The affirmative vote of two or more judges of the panel shall be necessary for a request for certification. If the panel votes to request certification, it shall issue an opinion in the case, setting forth the grounds of its decision and a finding that there is a substantial question of law which should be reviewed by the supreme court, together with a clear statement of what the question is."

Effective September 3, 1996, the rule was substantially changed to provide as follows: "If at any time before decision the appellate court determines that it is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a motion to transfer under Sec. 4024 and shall promptly decide whether to transfer the case to itself."

Appellate Court's request for certification.[2] We affirm the judgment of the Appellate Court, but based in part on different reasons.[3]

The facts as stipulated to by the parties were set out in the Appellate Court decision. "Sharper Image is a Delaware corporation with headquarters in San Francisco, California. It is engaged nationally and internationally in the retail sale of merchandise, and makes both in-store and mail order sales.

"In Connecticut, Sharper Image maintains one store in Stamford and one store in Hartford. In addition to its store sales, Sharper Image makes sales by means of telephone and mail orders transmitted to its San Francisco office. It collects and remits to the commissioner the Connecticut sales and use taxes levied on sales made at its stores in Connecticut and on its mail order sales. [Sharper Image] concedes that it has a nexus with Connecticut for purposes of sales and use tax collection.

"Sharper Image publishes monthly catalogs. The catalogs advertise the products that are available for sale both by catalog orders and at the retail stores, although some products are exclusively catalog order products.

"Sharper Image contracts for the printing and distribution of catalogs from its San Francisco headquarters. It has entered into a contract with Mid-American Web Press, Inc., doing business as Foote & Davies of Lincoln,

---

[2] We granted the request for certification, limited to the following question: "Under the circumstances of this case, was the taxpayer liable for payment of a Connecticut use tax on its catalogs that were mailed to Connecticut residents?" *Sharper Image Corp.* v. *Miller*, 238 Conn. 907, 908, 679 A.2d 2 (1996).

[3] We base our decision on the construction of the applicable use tax statutes and, consequently, we do not reach the economic benefits analysis that was part of the Appellate Court's decision. See *Val-Pak of Central Connecticut North, Inc.* v. *Commissioner of Revenue Services*, 44 Conn. Sup. 133, 142, 670 A.2d 343 (1994), aff'd, 235 Conn. 737, 669 A.2d 1211 (1996).

Nebraska (Foote & Davies), for the printing and mailing of the catalogs to residents of foreign countries and throughout the United States, including Connecticut. All instructions and payments to Foote & Davies are made from Sharper Image's San Francisco headquarters. The numbers of catalogs printed for Sharper Image are as follows: 1988—33.9 million; 1989—40.1 million; 1990—34.3 million. Approximately 2 percent of all catalogs printed for Sharper Image are sent to Connecticut residents. [Sharper Image] has not contracted with any third parties located in Connecticut for the printing or distribution of the catalogs, and none of Sharper Image's Connecticut employees are involved in any way with the printing or distribution of the catalogs that are the subject of the assessment in this action.

"The catalogs are printed and labeled by Foote & Davies. Foote & Davies transports the catalogs to the mail by way of United States Postal Service (postal service) trailers located at the Foote & Davies facility in Nebraska. Sharper Image's San Francisco headquarters provides Foote & Davies with a mailing list, which contains the names of customers and prospective customers to whom catalogs are to be sent. The catalogs are addressed to the person named or the current resident at the address listed on the label, and are sent by third class mail.

"Neither Sharper Image nor Foote & Davies can withdraw or redirect the catalogs from the mail once they are placed in the postal service trailers. If catalogs are not delivered to the addressee, [Sharper Image] does not receive a refund or credit from the postal service for the postage or the value of the catalogs lost. Catalogs that the postal service is unable to deliver are destroyed.

"Sharper Image has never withdrawn or redirected the catalogs from the mail, or ever taken physical possession of the catalogs mailed to Connecticut residents.

"On December 1, 1991, the commissioner issued a notice of assessment of use taxes to [Sharper Image] based on the sales price of catalogs sent by Foote & Davies to Sharper Image's customers and prospective customers who are Connecticut residents. The commissioner imposed the use tax on Sharper Image pursuant to General Statutes §§ 12-411 and 12-407 (5). The commissioner determined that Sharper Image made a taxable use of the catalogs mailed from out of state to Connecticut residents. On January 21, 1992, Sharper Image filed a protest of the assessment. On March 14, 1994, a department [of revenue services] hearing officer upheld the assessment insofar as liability for catalogs mailed to Connecticut. The revised assessment consists of $52,466.70 in use taxes, a $2218.33 penalty and $45,471.35 in interest through March 31, 1994. The revised assessment is based on the sales price of catalogs sent by Foote & Davies to Sharper Image's customers.

"In addition to the catalogs mailed to Connecticut residents, Foote & Davies mails catalogs to Sharper Image's Connecticut stores where they are available for employees and customers. Sharper Image paid the use tax on these catalogs because they were received in Connecticut by its Connecticut employees at its Connecticut stores. Sharper Image does not contest the amount of the taxes assessed on the catalogs at issue, but rather challenges the state's right to levy any taxes on catalogs mailed to Connecticut residents." *Sharper Image Corp.* v. *Miller*, supra, 42 Conn. App. 311–13.

Because the "matter was presented to the trial court entirely on the pleadings, stipulations of the parties and a single plaintiff's exhibit"; id., 313; we, like the Appellate Court, conduct a plenary review of the trial court's decision "and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." *United*

*Technologies Corp.* v. *Groppo,* 238 Conn. 761, 767, 680 A.2d 1297 (1996).

This case requires us to examine the purpose and application of the Connecticut use tax, and the statutory scheme attached to that tax. "The Sales and Use Tax[es] Act [General Statutes § 12-406 et seq.] imposes both taxes and places their ultimate burden on the purchaser. . . . The two taxes are [however] different in conception . . . [and] are assessments upon different transactions . . . . A sales tax is a tax on the freedom of purchase . . . . A use tax is a tax on the enjoyment of that which was purchased. . . . [G]enerally a sales tax is imposed on items acquired within the state and a use tax is imposed on items acquired outside the state for use within this state." (Citations omitted; internal quotation marks omitted.) *Steelcase, Inc.* v. *Crystal,* 238 Conn. 571, 578, 680 A.2d 289 (1996). "The use tax . . . was developed to safeguard [s]tate sales tax revenues from erosion by purchases of goods outside the [s]tate, and to protect local merchants from loss of business to border and other [s]tates that either have no sales tax or whose sales tax rate is lower than that of the merchant's [s]tate." 2 J. Hellerstein & W. Hellerstein, State Taxation (1992) § 16.01, p. 16-2.

"In construing any statute, [including taxing statutes] we seek to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Steelcase, Inc.* v. *Crystal,* supra, 238 Conn. 577–78.

The general rule is that "when the issue is the imposition of a tax, rather than a claimed right to an exemption

or a deduction, the governing authorities must be strictly construed against the commissioner and in favor of the taxpayer." (Internal quotation marks omitted.) *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 54, 607 A.2d 424 (1992). Nevertheless, because "[t]he use tax was created as a complementary measure to insure the equitable diffusion of the tax burden upon both in-state purchases of tangible personal property and out-of-state purchases of tangible personal property where such property is used, stored or [otherwise] consumed within the state, thus being, in a certain sense, a gap-filling measure"; *International Business Machines Corp.* v. *Brown,* 167 Conn. 123, 129, 355 A.2d 236 (1974); we must liberally construe that tax in order "to achieve such purposes." Id. In other words, a liberal construction of the use tax is necessary to achieve its gap-filling objective of allocating, in an equitable manner, the burden of taxation on goods sold in Connecticut, as well as on those goods purchased outside the state for use in Connecticut. See 2 J. Hellerstein & W. Hellerstein, supra, § 16.01, p. 16-2. In furtherance of this equitable principle, and in order to eliminate the possibility of double taxation, a taxpayer may be entitled to a full or partial credit toward a use tax assessed in Connecticut for any sales tax paid in another state on any service or article of tangible personal property. General Statutes § 12-430 (5).[4]

The relevant statutes are as follows. General Statutes § 12-411 (1) provides in pertinent part: "An excise tax

---

[4] General Statutes § 12-430 (5) provides: "Payment of sales or use tax to another state. If any service or article of tangible personal property has already been subjected to a sales or use tax by any other state or political subdivision thereof and payment made thereon in respect to its sale or use in an amount less than the tax imposed by this chapter, the provisions of this chapter shall apply, but at a rate measured by the difference, only, between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed. If such tax imposed in such other state or political subdivision thereof is equivalent to or in excess of the rate imposed

is hereby imposed on the storage, acceptance, consumption *or any other use* in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or *any other use* in this state, the acceptance or receipt of any services constituting a sale in accordance with subdivisions (i) to (*l*), inclusive, of subsection (2) of section 12-407 . . . ." (Emphasis added.) Section 12-411 (2), with respect to the liability for the use tax, provides in pertinent part: "Every person storing, accepting, consuming *or otherwise using* in this state services or tangible personal property purchased from a retailer . . . is liable for the tax. . . ." (Emphasis added.) General Statutes § 12-407 (5) defines "use" as follows: " 'Use' includes the *exercise of any right or power over tangible personal property incident to the ownership* of that property, except that it does not include the sale of that property in the regular course of business." (Emphasis added.)

The crux of Sharper Image's argument is that, under the circumstances of this case, the distribution of *its* catalogs in Connecticut did not meet the definition of "use" contained in § 12-407 (5). Specifically, Sharper Image argues that it did not own the catalogs once they were mailed from outside of Connecticut by Foote & Davies and, even if it did own the catalogs, it did not "exercise a right or power" over the catalogs incident to that ownership in Connecticut.[5]

under this chapter at the time of such sale or use, then no tax shall be due on such article."

[5] We find it useful to note what is not in dispute in this appeal. Although raised before the trial court, Sharper Image did not argue on appeal that the use tax on the catalogs is a tax on interstate commerce in violation of the United States constitution's commerce clause. The substantial nexus in this case that provides the factual underpinning to support the constitutional imposition of the use tax on Sharper Image was the business and name recognition generated at its Connecticut stores as a result of the distribution of its catalogs in Connecticut. See *D. H. Holmes Co., Ltd.* v. *McNamara,* 486 U.S. 24, 31, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988).

In addition, Sharper Image does not contest the use tax assessed on the

Sharper Image's claim that it did not own the catalogs in Connecticut is unavailing. It conceded in the Appellate Court that "it owned the catalogs while they were at Foote & Davies. [Sharper Image also] agree[d] that ownership never passed to the postal service, nor [did] it pass to the recipient of the catalogs until delivery [was] accomplished." *Sharper Image Corp.* v. *Miller*, supra, 42 Conn. App. 315. Notwithstanding these concessions, Sharper Image would have this court conclude that the catalogs that it directed into Connecticut were owned by no one. This is a proposition we cannot accept. Although ownership of a catalog passes to the addressee once it is delivered; see *SFA Folio Collections, Inc.* v. *Bannon*, 217 Conn. 220, 228, 585 A.2d 666, cert. denied, 501 U.S. 1223, 11 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991); the ownership remains with the sender until such time as it is actually delivered to the addressee. It defies common sense to say that no one owned the catalogs once they were placed in the United States mail just because Sharper Image chose a method of delivery by which it could not withdraw or redirect the delivery of the catalogs and that provided for the destruction of undeliverable catalogs by the postal service, two facts upon which Sharper Image relies.

The main thrust of Sharper Image's argument is that it did not exercise a right or power over the catalogs in Connecticut within the meaning of the word "use" provided for in § 12-407 (5). We are unpersuaded. Although Sharper Image neither stored, accepted nor consumed the catalogs in this state, it did cause them to be distributed in Connecticut, which satisfies the broad taxable event of "other use" set forth in § 12-411 (1). We conclude that distribution falls within the plain language of "other use."[6]

catalogs sent directly to its two stores in Connecticut, because those catalogs were for use and distribution in those stores. Indeed, Sharper Image paid the use tax on those catalogs.

[6] Sharper Image's reliance on § 14.2 of the Connecticut Sales and Use Tax Manual is unavailing. That manual, which supports Sharper Image's position,

Sharper Image argues that it did not exercise any rights or control over the catalogs in Connecticut, because once they were deposited with the postal service outside the state, the postal service had exclusive control over the catalogs from that point onward, including the time during which the catalogs were being distributed in Connecticut. Even though the distribution was accomplished by having the catalogs placed in the hands of the postal service in Nebraska, the delivery was not at the discretion of the postal service. Rather, the delivery was directed by Sharper Image to specific residents in this state. Sharper Image contracted with Foote & Davies to print and label the catalogs based on a mailing list it provided to them, and Sharper Image also directed that they be delivered by the postal service. Simply put, the catalogs entered the state at the command and direction of Sharper Image. We see no distinction between this arrangement and one in which the employees of Sharper Image themselves deliver the catalogs door to door in Connecticut. Furthermore, merely because Sharper Image made an intentional business decision to have the catalogs mailed by third class mail, which resulted in undeliverable catalogs being destroyed, does not alter the character of the use of the catalogs in Connecticut. Likewise, Sharper Image's argument that it could not withdraw or redirect the catalogs under any circumstances once they were placed with the postal service is unconvincing. Although Sharper Image did not have possession of the catalogs while they were en route to Connecticut

was the commissioner's interpretation of the use tax statutes at issue here prior to the decision in *D. H. Holmes Co., Ltd.* v. *McNamara*, 486 U.S. 24, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988). In that case, the United States Supreme Court held that the imposition of a use tax on catalogs distributed from out of state is not in violation of the commerce clause if a taxpayer's activity has a substantial nexus with the taxing state and other factors are also met. Id., 31. Since *D. H. Holmes Co., Ltd.*, the commissioner has changed his position on the taxability of catalogs and has disavowed the previous position contained in the manual.

residents, its ultimate decision to target deliveries to those residents falls within the ambit of the statute's progressive definition of "use." We conclude that our legislature's definition of "use" in § 12-407 (5), which is defined as including the "exercise of any right or power over tangible personal property," encompasses, but is not limited to, the distribution of catalogs as it occurred in this case.[7]

The United States Supreme Court, in *D. H. Holmes Co., Ltd.* v. *McNamara*, 486 U.S. 24, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988), in the context of a constitutional challenge under the commerce clause, addressed an argument similar to the one espoused by Sharper Image in this case with respect to control of its catalogs. In *D. H. Holmes Co., Ltd.*, the court concluded that the taxpayer had a substantial nexus with the taxing state because, among other things, it had sufficient control over its catalogs mailed into that state even though the catalogs were delivered for distribution to the United States postal service outside the state by the printers the taxpayer had hired. Id., 32. Similar to the present case, the taxpayer in *D. H. Holmes Co., Ltd.*, ordered and paid for its catalogs, supplied the list of residents to whom the catalogs were to be delivered, and had the catalogs turned over to the United States postal service, all of which occurred in a state other than the taxing state. Id., 26. The distribution of the catalogs to the residents, as in this case, was not for a benevolent purpose, but, rather, was for the business purposes of the taxpayer. Id., 32. Justice Rehnquist, writing for a unanimous court, stated that the taxpayer's "contention that it lacked sufficient control over the catalogs' distribution [in the taxing state] to be subject to the use tax

---

[7] We recognize that other jurisdictions have come to different conclusions based upon the interpretation of their own use tax statutes. See, e.g., *Sharper Image Corp.* v. *Dept. of Treasury*, 216 Mich. App. 698, 550 N.W.2d 596 (1996). Nonetheless, we are unpersuaded by those decisions.

verges on the nonsensical. [The taxpayer] ordered and paid for the catalogs and supplied the list of customers to whom the catalogs were sent . . . ."[8] Id.

The Arizona Court of Appeals, in *Service Merchandise Co.* v. *Dept. of Revenue*, 937 P.2d 336 (Ariz. App. 1996),[9] was presented with a case factually indistinguishable from the present case with respect to the assessment of a use tax on catalogs distributed from outside the taxing state. The plaintiff in *Service Merchandise Co.* was a Tennessee corporation that conducted business in most states, operating several hundred retail stores, two of which were in Arizona. Id., 337. It also distributed catalogs and fliers to its customers, which were designed at its Tennessee headquarters. Id. Two companies located outside Arizona printed the catalogs and fliers, and affixed the addresses based on a mailing list provided by the plaintiff. Id., 337–38. The catalogs and fliers were mailed directly to Arizona residents from United States postal facilities at the various printers' locations. Id., 338.

The court in *Service Merchandise Co.* addressed the plaintiff's arguments, which are strikingly similar to Sharper Image's arguments in this case, as follows: "[The taxpayer] concedes that it exercised rights incidental to ownership while the catalogs were outside Arizona. Its officers and employees in Tennessee entered into contracts with the printers, determined the

---

[8] Although the taxpayer in *D. H. Holmes Co., Ltd.*, was incorporated and had its principal place of business in the taxing state, the court did not focus on those facts for the purpose of determining whether the taxpayer had sufficient control over the catalogs distributed in the taxing state.

We also recognize that in *D. H. Holmes Co., Ltd.*, undelivered catalogs were returned to the taxpayer, while in the present case they were destroyed by the postal service. This is not, in our opinion, a significant factor in determining whether the taxpayer exercises a right or power over the catalogs.

[9] The plaintiff in *Service Merchandise Co.* filed a petition for review by the Arizona Supreme Court, which was denied on May 20, 1997.

content of the catalogs and fliers, compiled address lists, contracted with common carriers, and paid for the printing and shipment of the materials.

"However, [the taxpayer] denies that it exercised any such rights in Arizona. It contends that every act incidental to its ownership occurred in Tennessee. [The taxpayer] further argues that while its acts in Tennessee caused the materials to be distributed in Arizona, it exercised no control over the materials after the printers shipped or mailed them from their out-of-Arizona locations.

"We hold that distribution of the catalogs and fliers in Arizona was a use by [the taxpayer] incidental to its ownership. [The taxpayer] contracted for the right to have the catalogs distributed to specified Arizona customers at particular times during the year. Although the distribution contracts were consummated outside Arizona, the rights to control when, where, how, to whom and whether the catalogs would be delivered were exercised in Arizona through [the taxpayer's] agents. We see no reason to treat [the taxpayer] differently for tax purposes merely because it employed agents to do in Arizona what it could have done itself." Id.

"It is true that our statute does not specifically mention distribution. However, it would be redundant to do so in light of Arizona's broad definition of 'use.' Arizona law defines use as the exercise of any right or power over tangible personal property incidental to owning the property . . . . Because distribution is a right incidental to ownership, it was unnecessary for the [l]egislature to specifically include it in the definition of use." (Citation omitted; internal quotation marks omitted.) Id., 339.[10] We find the decision

[10] See *Talbots, Inc.* v. *Schwartzberg,* 928 P.2d 822, 824 (Colo. App. 1996) (Although use tax statute contained term "distributing," court nonetheless relied solely on definition of "use" and stated that "[t]he broad scope of

of the Arizona Court of Appeals especially persuasive because its use tax statutes, although not identical, are similar to ours.[11]

Accordingly, we conclude that Sharper Image exercised a "right or power" over its catalogs in Connecticut by orchestrating the distribution of the catalogs to Connecticut residents.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

the ordinance [permitted] a tax on the use or distribution of property in Denver which has been directed from outside the city. . . . [The court held] that the definition of 'use' contained in [Denver's municipal code] includes the distribution of . . . material by the direct mailing of catalogs to Denver addressees. Thus, [the taxpayer] retained control over its catalogs and 'used' them within the meaning of the ordinance by distributing them to potential customers in Denver.").

[11] "Arizona imposes a tax on the use or consumption in this state of tangible personal property purchased from a retailer . . . . Every person . . . using or consuming in this state tangible personal property purchased from a retailer is liable for the tax. . . . 'Use' and 'consumption' are defined by statute as the exercise of any right or power over tangible personal property incidental to owning the property . . . ." (Citations omitted; internal quotation marks omitted.) *Service Merchandise Co.* v. *Dept. of Revenue*, supra, 937 P.2d 338. We conclude that our use tax statutes are as broad, if not broader, than the Arizona use tax statutes at issue in *Service Merchandise Co.*