957 P.2d 1369

**SHARPER IMAGE CORPORATION, Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.**

**No. 1 CA–TX 97–0017.**

Court of Appeals of Arizona, Division 1, Department T.

May 5, 1998.

O'Connor Cavanagh Molloy Jones by George O. Krauja, Tucson, and Brann & Isaacson by Martin I. Eisenstein and Ann M.

St. Peter–Griffith, Lewiston, Maine, for Plaintiff–Appellant.

Grant Woods, The Attorney General by Sara D. Branscum, Assistant Attorney General, Phoenix, for Defendant–Appellee.

THOMPSON, Judge.

¶ 1 Sharper Image Corporation (Sharper Image) appeals from summary judgment in favor of the Arizona Department of Revenue (DOR) in Sharper Image's tax court appeal from an assessment of Arizona use taxes. The use taxes were levied on Sharper Image's expenditures from October 1, 1987, through September 30, 1991, for printing and mass-mailing merchandise catalogs to Arizona residents from outside of the state. We must consider whether the tax court erred in interpreting our recent decision in *Service Merchandise Co. v. Arizona Dep't of Revenue*, 188 Ariz. 414, 937 P.2d 336 (App.1996), as requiring a holding that Sharper Image engaged in a taxable "use" of these merchandise catalogs in Arizona.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 During the audit period Sharper Image engaged in retail sales of merchandise from its headquarters in San Francisco, California. It made sales in response to mail and telephone orders and at its retail stores, one of which is located in Phoenix.

¶ 3 To stimulate sales, Sharper Image published monthly merchandise catalogs. A third-party contractor in Lincoln, Nebraska, printed, addressed and mailed the catalogs directly to persons named on mailing lists that Sharper Image supplied. The named recipients included persons in Arizona. About two million catalogs were mailed from Lincoln to Arizona addresses during the audit period. Sharper Image paid no sales tax on those catalogs.

¶ 4 Sharper Image determined what products would be advertised in the catalogs and their prices; created and designed the catalogs down to their layouts and print typefaces; selected the third-party printer; edited and proofread the catalogs before the printer finalized them; and decided how of-

ten, how many, when, where and to whom the catalogs would be sent. Sharper Image made all arrangements with its third-party printer from its offices in San Francisco or through in-person contact in Lincoln. Sharper Image paid all postage for mailing its catalogs. Neither Sharper Image nor the printer made any arrangements in Arizona concerning their transactions. Additionally, no agent conducted business or engaged in any activity on behalf of Sharper Image in Arizona pertaining to distribution of its catalogs.

¶ 5 Sharper Image instructed its printer to mail the catalogs so its customers would receive them between approximately the fifth and fifteenth of each month. All mailings were accomplished through a "plant load operation," in which the printer deposited the finished, addressed catalogs into detached postal service trailer units placed at its business location by agreement with the United States Postal Service (USPS). After loading, a USPS inspector would close and seal the doors, terminating all control Sharper Image or the printer had over the catalogs. Once the catalogs were loaded, neither could recall them, redirect them, or obtain their return. Because the catalogs were sent as third-class mail, undeliverable catalogs were not returned to the sender, but rather destroyed by USPS.

¶ 6 The catalogs contained complete lists of Sharper Image retail locations. They also included mail order forms and telephone ordering numbers. Sharper Image directed its catalogs to areas in Arizona with no Sharper Image stores.

¶ 7 DOR audited Sharper Image for the period from October 1, 1987, through September 30, 1991. During the audit period, Sharper Image earned approximately $14.8 million from Arizona sales. Some $3.14 million of this amount came from telephone and mail order sales to Arizona residents, and the balance from sales at the Phoenix retail store. DOR assessed $26,837.50 in Arizona use taxes and $7,642.81 in interest on the value of the catalogs that Sharper Image sent to Arizona residents during the audit period. On Sharper Image's protest, a DOR hearing officer set the assessment aside, but the DOR Director reinstated it.

¶ 8 Sharper Image brought this action in the tax court as permitted by Ariz.Rev.Stat. Ann. (A.R.S.) § 42–124. On cross-motions for summary judgment, the tax court ruled:

The Sharper Image argues that it didn't "use" the catalogs in Arizona; it merely shipped them here. The Department argues, that in view of the fact that The Sharper Image directed who would mail the catalogs, to whom they would be sent, and how and when they would be sent, it "used" them.

In *Service Merchandise Co., Inc. v. Arizona Dep't of Revenue,* 188 Ariz. 414, 937 P.2d 336 (App.1996), the Court of Appeals, in a situation almost identical to this one, ruled that an out-of-state company that directed who would mail its catalogs, to whom they would be sent, and how and when they would be sent to Arizona customers, did "use" the catalogs in Arizona.

The Sharper Image makes a trenchant argument that that case is distinguishable. I don't believe it is. If "use" is defined as exercising a right or power over property incidental to ownership, then The Sharper Image "used" this property.

¶ 9 From formal judgment, Sharper Image timely appeals. We have appellate jurisdiction under A.R.S. § 12–2101(B).

## DISCUSSION

¶ 10 A.R.S. § 42–1408 (Supp.1997) levies an excise, commonly called a "use tax," on the "storage, use or consumption in this state of tangible personal property purchased from a retailer, as a percentage of the sales price." The rate of tax is the same as would be applied to a retailer for the same type of transaction under Arizona's transaction privilege tax statutes. A.R.S. § 42–1408(C). A.R.S. § 42–1401(8) provides that "[u]se or consumption means the exercise of any right or power over tangible personal property incidental to owning the property except holding for sale or selling the property in the regular course of business."

¶ 11 Sharper Image contends that *Service Merchandise* does not control this case.

In that case, notes Sharper Image, we determined that the taxpayer had "used" its merchandise catalogs in Arizona through the actions of "agents" it employed to deliver them to Arizona residents. 188 Ariz. at 416–17, 418 n. 2, 937 P.2d at 338–39, 340 n. 2. By contrast, Sharper Image placed its catalogs in the hands of Arizona residents not through "agents," but rather via USPS. Sharper Image emphasizes at some length that the postal service clearly could not be its "agent" within the meaning of that term under the law of principal and agent. Sharper Image places great store in the detailed evidence it presented in the tax court that it had no control at all over what USPS did with the catalogs once they were in USPS hands, and that Sharper Image could not recall, withdraw or redirect the catalogs or order their return. In response to DOR's argument that the *Service Merchandise* court used the term "agent" more loosely that Sharper Image construes it, and that the court meant equally to encompass independent contractors over whom a shipper controls only the ultimate result to be accomplished, Sharper Image argues:

Had this Court in *Service Merchandise* intended its use of the term "agent" to mean something other than a principal-agent relationship, it would have expressed as much. It did not, and indeed it used the term agent in three separate places. This Court used the term agent because ... only an agent's actions can be attributed to another party; thus, the court stated that Service Merchandise could not do through "agents" what it could not otherwise do itself. An agent serves as an instrumentality for the principal to accomplish the objectives of the principal.

. . . .

Moreover, the Arizona courts have expressly held that ordinarily no liability flows to a principal from the actions of an independent contractor.

Reply Brief at 8, 10 (footnote omitted, citations omitted).

¶ 12   Sharper Image's extensive foray into agency and master-servant law suggests it has missed the real holding of *Service Merchandise*. *Service Merchandise* had nothing to do with fixing vicarious tort or contract liability on the taxpayer based on the nature of specific conduct that others undertook in its name or in the course of its business. The determinative fact in *Service Merchandise* was that the non-Arizona taxpayer there accomplished intended dispositions of its personal property in Arizona through other entities acting on its behalf, as its surrogates, instrumentalities, proxies, or, loosely, "agents." The details of principal-agent and master-servant law were accordingly immaterial there. They are likewise immaterial here.

¶ 13   *Service Merchandise* characterizes its holding as follows:

[D]istribution of the catalogs and fliers in Arizona was a use by Service Merchandise incidental to its ownership. Service Merchandise contracted for the right to have the catalogs distributed to specified Arizona customers at particular times during the year. Although the distribution contracts were consummated outside Arizona, the rights to control when, where, how, to whom and whether the catalogs would be delivered were exercised in Arizona through Service Merchandise's agents. We see no reason to treat Service Merchandise differently for tax purposes merely because it employed agents to do in Arizona what it could have done itself.

188 Ariz. at 416, 937 P.2d at 338. We grant that the taxpayer in *Service Merchandise* may have had more precise control over the timing and reliability of in-Arizona deliveries of its catalogs than did Sharper Image here. But both taxpayers did the same thing in the final analysis—they put their catalogs to use as marketing tools in Arizona through the actions of third parties whom they enlisted and paid to act as their Arizona proxies in doing so.

¶ 14   One cannot reasonably dispute the use-tax liability of a hypothetical taxpayer in the position of Service Merchandise or Sharper Image who has its own employees truck its advertising materials to Arizona and deliver them to Arizona addressees. As we intimated in *Service Merchandise*, no sensible rationale can be offered for holding that a taxpayer who does exactly the same thing

478

through private or quasi-public independent contractors does not use its property in Arizona to precisely the same extent.

¶ 15 In a recent decision, the Supreme Court of Connecticut reached the same conclusions that we do. *See Sharper Image Corp. v. Miller*, 240 Conn. 531, 692 A.2d 774 (1997). In rejecting Sharper Image's challenge to a use tax assessment on the purchase price of catalogs mailed to residents of Connecticut, the court stated:

Sharper Image argues that it did not exercise any rights or control over the catalogs in Connecticut, because once they were deposited with the postal service outside the state, the postal service had exclusive control over the catalogs from that point onward, including the time during which the catalogs were being distributed in Connecticut. Even though the distribution was accomplished by having the catalogs placed in the hands of the postal service in Nebraska, the delivery was not at the discretion of the postal service. Rather, the delivery was directed by Sharper Image to specific residents in this state. Sharper Image contracted with Foote & Davies to print and label the catalogs based on a mailing list it provided to them, and Sharper Image also directed that they be delivered by the postal service. Simply put, the catalogs entered the state at the command and direction of Sharper Image. We see no distinction between this arrangement and one in which the employees of Sharper Image themselves deliver the catalogs door to door in Connecticut. Furthermore, merely because Sharper Image made an intentional business decision to have the catalogs mailed by third class mail, which resulted in undeliverable catalogs being destroyed, does not alter the character of the use of the catalogs in Connecticut. Likewise, Sharper Image's argument that it could not withdraw or redirect the catalogs under any circumstances once they were placed with the postal service is unconvincing. Although Sharper Image did not have possession of the catalogs while they were en route to Connecticut residents, its ultimate decision to target deliveries to those residents falls within the ambit of the statute's progressive definition of "use." We conclude that our legislature's definition of "use" in § 12–407(5), which is defined as including the "exercise of any right or power over tangible personal property," encompasses, but is not limited to, the distribution of catalogs as it occurred in this case.

*Id.*, 692 A.2d at 779–80 (footnote omitted). The *Sharper Image Corp. v. Miller* court cited our decision in *Service Merchandise*, characterizing it as "factually indistinguishable from the present case with respect to the assessment of a use tax on catalogs distributed from outside the taxing state." *Id.* at 780.

¶ 16 We reject Sharper Image's contention that *Sharper Image Corp. v. Miller* is legally distinguishable due to a significantly greater breadth in the scope of the Connecticut use tax statute. The definition of "use" in the Connecticut statute includes the "exercise of any right or power over tangible personal property...." Conn. Gen.Stat. Ann. § 12–407(5). There is no significant difference between that definition and the definition of "use or consumption" in A.R.S. § 42–1401(8) (Supp.1997): the "exercise of any right or power over tangible personal property incidental to owning the property except holding for sale or selling the property in the regular course of business." In meaning, Connecticut's statutory definition of "use" was virtually identical to that of "use or consumption" under A.R.S. § 42–1401(8).

¶ 17 The same is true of the scope of Connecticut's taxing provision itself. The Connecticut use tax statute imposed the tax on the purchase price of property acquired for "storage, acceptance, consumption or any other use" in the state. Conn. Gen.Stat. Ann. § 12–411(1). The use tax under A.R.S. § 42–1408 (Supp.1997) is on the "storage, use or consumption in this state of tangible personal property purchased from a retailer, as a percentage of the sales price." Given the breadth of the Arizona definition of "use or consumption," the additional specifics and the phrase "any other use" in the Connecticut statute do not render its reach any broader than that of A.R.S. § 42–1408.

¶ 18 Sharper Image relies on *Sharper Image Corp. v. Department of Treasury of Michigan,* 216 Mich.App. 698, 550 N.W.2d 596 (1996), though it is only in its reply brief that Sharper Image cites the case other than in a footnote. That case concerned a situation virtually identical with the one before us here. The Michigan statute defined "use" as "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." Mich. Stat. Ann. § 7.555(2)(b). The appellate court ruled for Sharper Image, holding (1) that its "exercise of a right or power over the catalogs ended when the catalogs were delivered to the postal service in Nebraska," and (2) the statutory definition of "use" did not encompass "distribution." 550 N.W.2d at 598.

¶ 19 In *Service Merchandise,* 188 Ariz. at 416–17, 937 P.2d at 338–39, we distinguished the Michigan appellate court opinion based on the broader language of A.R.S. § 42–1401(8) ("use" is "the exercise of *any* right or power over tangible personal property incidental to owning the property . . . ." (emphasis added)). We now observe that the Michigan court's opinion appears to have determined the scope of the definition of "use" largely on the absence of the term "distribution" in its concluding clause. Unaccountably, the Michigan court chose not to comment on the effect that the inherently broad, general definition of "use" ("exercise of a right or power over tangible personal property incident to the ownership of that property . . .") might have on the meaning of the definition considered as a whole.

¶ 20 The Michigan court's opinion fails to take account of these additional facts: (1) Sharper Image had its printers address its catalogs to individual Michigan residents; (2) Sharper Image paid USPS to deliver the catalogs as addressed; (3) Sharper Image made a business decision to purchase a class of USPS service under which undeliverable catalogs would not be returned to it; and (4) USPS delivered catalogs to the Michigan addressees on Sharper Image's behalf, as its surrogate or proxy. We are unpersuaded by the Michigan court's analysis. *Cf. Sharper*

*Image Corp. v. Miller,* 692 A.2d at 780 (citing *Sharper Image Corp. v. Department of Treasury* as example of other jurisdictions' contrary decisions by which court was "unpersuaded").

¶ 21 Sharper Image contends, however, that applying Arizona's use tax to a nonresident taxpayer is not within the legislative purpose for that tax. It states that that purpose was and is to prevent in-state residents from evading Arizona sales taxes by buying personalty in a jurisdiction with no such tax and then bringing it home to use. This is surely true as far as it goes, but it does not account for the fact that the tax code does not limit the application of the use tax to Arizona residents. Sharper Image attempts no harmonizing explanation on that point. To the extent that Sharper Image's argument amounts to a request that we revisit *Service Merchandise,* we decline to do so.

## CONCLUSION

¶ 22 The tax court correctly held that Sharper Image engaged in a taxable "use" of its merchandise catalogs in Arizona. The judgment is affirmed.

PATTERSON, P.J., and RYAN, J., concur.