HARRIS, J.
Ocala Breeders’ is in the business of conducting sales of other people’s racehorses. As a part of that business, Ocala Breeders’ accepts horses on consignment based on physical inspection and review of pedigree. As a part of its sales practice, Ocala Breeders’ contracts with The Jockey Club of Kentucky and with Bloodstock Research to obtain information as to lineage, race records, etc. on the horses accepted for auction. The information obtained from the Jockey Club or Bloodstock is received by Ocala Breeders’ either through a modem or by having the information supplied directly to the out of state printer of Ocala Breeders’ catalog. Ocala Breeders’ contracts with an out-of-state printer to supply its catalogs. Since these catalogs are given away free by Ocala Breeders’ in the process of trying to sell the horses it has on consignment, the Department of Revenue has valued the catalog for tax purposes by adding to the amount paid directly to the printer of the catalog that amount paid to the Jockey Club and Bloodstock for information which is included in the catalog. The trial court rejected this approach to valuation and we affirm. The Department acknowledges that it cannot tax Ocala Breeders’ directly for the information received from the Jockey Club and Bloodstock. This information is quite clearly not tangible personal property. See Department of Revenue v. Quotron Systems, Inc., 615 So.2d 774 (Fla. 3d DCA 1993). The Department urges that by making the information available in the catalog, Ocala Breeders’ has increased its cost for the catalog by the amount paid for the information, thus making such costs taxable as a use tax.
The Department relies on section 212.05 Florida Statutes (1997), which provides:
It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, including the business of making mail order sales, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state.
First, it is somewhat doubtful that Ocala Breeders’ has exercised the privilege of engaging in a business of selling tangible personal property at retail. It is more accurate to describe Ocala Breeders’ business as providing an auctioneering service by which other people’s tangible personal property is sold to the highest bidder. Second, Ocala Breeders’ is not in the mail order sales business. This distinguishes this case from Sears or Home Depot, which sell from their catalogs. The catalog in this case is merely an advertisement as to what will be sold and when the sale will be held. One must be the top bidder at the sale to purchase any particular horse. It has not been pointed out how Ocala Breeders’ comes under the other provisions of section 212.05.
Even assuming Ocala Breeders’ comes within the purview of section 212.05, we are not convinced that the cost of the information concerning the pedigree and racing history of a horse adds to the cost of the *389 catalog.[1] Although such costs would certainly add to Ocala Breeders’ expense of selling the horses, the catalog would cost the same with or without such information being included. The legislature earlier decided that it would not tax professionals for their services in rendering opinions. We do not believe it intended to thereafter tax the clients for using the opinions thus obtained. We therefore agree that it was improper to add the costs of totally separate intangible services as a part of the “cost price” of the catalog.
AFFIRMED.
DAUKSCH, J., concurs.
W. SHARP, J., dissents, with opinion.

. The Department relies heavily on section 212.02(4) which provides that the cost price is the "actual cost of tangible personal property without any deductions therefrom on account of •the cost of material used, labor or service costs, transportation charges, or any expense whatsoever.” We construe this to refer to services related to the publication and delivery of the catalog and not for the accumulation of information which may be included in the catalog.